### A. Douglas PEABODY, Plaintiff–Appellant,

v.

### WEIDER PUBLICATIONS, INC., Weider Health and Fitness, Inc., & Weider Health and Fitness, LLC, Defendants–Appellees.

No. 07–0094–cv.

United States Court of Appeals, Second Circuit.

Jan. 16, 2008.

---

Kent Yalowitz, Arnold & Porter, LLP (Ramon P. Marks, Christopher S. Rhee, on the brief), for Plaintiff–Appellant.

Alexandra Shapiro, Latham & Watkins, LLP (James E. Brandt, Andrew H. Warren, on the brief), New York, NY, for Defendants–Appellees.

PRESENT: Hon. CHESTER J. STRAUB, Hon. RICHARD C. WESLEY, Hon. DEBRA ANN LIVINGSTON, Circuit Judges.

## SUMMARY ORDER

Plaintiff A. Douglas Peabody appeals from an order of the United States District Court for the Southern District of New York (George B. Daniels, *Judge*) granting summary judgment in favor of defendants Weider Publications, Inc. ("WPI"), Weider Health and Fitness, Inc., and Weider Health and Fitness, LLC (collectively, "Weider").[1] In addition, Peabody also appeals from the District Court's denial, without prejudice, of his motion to amend his complaint to assert a fraud claim against Weider. We assume the parties' familiarity with the underlying facts and procedural history in this case.

---

1. On February 22, 2007, Peabody sought to file his brief and the parties' joint appendix under seal. However, Peabody has not submitted a motion seeking leave to file documents under seal in this Court, and we have not issued any order to that effect. Peabody may believe that he has authority to file documents under seal based upon the stipulated protective order entered by the District Court. To the extent that such an order has any bearing on proceedings in this Court, we will deem those documents unsealed to the extent we discuss their contents in this order.

■ On appeal, Peabody argues that the District Court erred in granting summary judgment because there are genuine issues of material fact in this case in three respects. First, Peabody contends that the evidence in the record creates a genuine issue of material fact with respect to whether Weider exercised its "call right" contained in the Option Agreement. However, it is undisputed that the relevant language of the Option Agreement is as follows:

> WPI may exercise the Call Right by sending written notice (the *"Call Notice"*) of such exercise to Peabody after the Call Right Date. The Call Notice will specify the purchase price to be paid per each then outstanding Option Share (the *"Stock Call Price"*) or the amount to be paid per each Option Share subject to issuance upon the exercise of the Option (the *"Option Call Price"*) and the effective time of the exercise of the Call Right.

On appeal, Peabody argues that the January 28, 2003 letter he received from Weider constituted an exercise of Weider's call right as prescribed by the Option Agreement.

In granting summary judgment in favor of Weider, the District Court rejected precisely this argument. The District Court concluded that, as a matter of law, the January 28, 2003 letter did not meet the requirements of a Call Notice as specified in the Option Agreement. Having reviewed the contents of this letter on appeal, we agree with the District Court's conclusion that the letter contains no indication that Weider "was exercising or intended to exercise the Call Right, when such exercise would become effective, or the amount to be paid to [Peabody]." Instead, the letter merely stated that Weider was "prepared" to exercise its Call Right, but only if Peabody signed the attached Option Cancellation Agreement. Peabody does not dispute the fact that he did not sign the Option Cancellation Agreement. Furthermore, Peabody has identified no other evidence in the record to support his argument that Weider exercised its Call Right. Although Peabody characterizes the District Court's interpretation of both the Option Agreement and the January 28, 2003 letter as a "factual" determination or conclusion, it is settled that the meaning of unambiguous contract terms is a question of law for a court, not a jury, to decide. *See Palmieri v. Allstate Ins. Co.,* 445 F.3d 179, 187 (2d Cir.2006). On appeal, Peabody does not challenge the District Court's interpretation of the terms of the Option Agreement. Both in opposition to Weider's motion for summary judgment and on appeal, Peabody has failed to come forward with any evidence that the January 28, 2003 letter or any other communication from Weider fulfilled the requirements of a Call Notice. As a result, no reasonable jury could conclude that Weider exercised its Call Right, and the District Court properly rejected Peabody's argument in opposition to Weider's motion.

■ Peabody also argues that the District Court erred in failing to recognize the existence of genuine issues of material fact with respect to whether the November 2002 sale of the WPI magazine business was a "Tag Sale" within the meaning of the Option Agreement. The parties agree that the November 2002 sale constituted a "Liquidity Event," as provided by that agreement. According to the Option Agreement, the simultaneous occurrence of both a Tag Sale and a Liquidity Event would require Weider to purchase a certain number of Peabody's shares at a certain price, as provided by other terms of the agreement. To constitute a Tag Sale, Weider must "sell[ ] Common Stock to a third party ..., and after such sale the

cumulative total of the shares of Common Stock sold by [Weider and affiliates, including WPI] to such third parties [must] exceed[ ] 10% of the then number of fully diluted shares of Common Stock. . . ." Peabody argues that "[t]he record is uncontested that [Weider] sold more than a 10% equity ownership interest in the Weider Publications magazine business to American Media, a third party."

On this issue, the District Court concluded that no reasonable jury could find that the magazine business sale in question constituted a Tag Sale. Specifically, the District Court quoted the definition of "Common Stock" in the Option Agreement to mean "the common stock, par value $.01 per share, of WPI." As Peabody did not argue that the magazine sale involved any transfer of WPI shares, the District Court concluded, as a matter of law, that such a sale was not a Tag Sale within the meaning of the agreement.

We concur with this analysis. On appeal, Peabody identifies no evidence indicating any involvement of WPI common stock in the sale of the magazine business or any other Weider-related transaction. Moreover, there is nothing in the Option Agreement that addresses the situation of any change in the "equity ownership interest in the Weider Publications magazine business" specifically. Plaintiff argues

that the District Court "elevated form over substance" and should have concluded that a Tag Sale "really occurred" vis-à-vis the magazine business sale. However, there is no reason for us to depart from the clear and unambiguous language of the Option Agreement, which defines a "Tag Sale" as described above.[2] *See Red Ball Interior Demolition Corp. v. Palmadessa,* 173 F.3d 481, 484 (2d Cir.1999) (stating that where the terms of a contract are clear, a court must not "alter or go beyond the express terms of the agreement, or [ ] impose obligations on the parties that are not mandated by the unambiguous terms of the agreement itself"). As a result, the District Court was entirely reasonable in concluding, as a matter of law, that the sale of the magazine business did not constitute a Tag Sale.

Peabody's third and final argument why the District Court erred in granting summary judgment in favor of Weider is that genuine issues of material fact exist regarding Weider's alleged breach of the covenant of good faith and fair dealing. However, on this issue, the District Court concluded that the good faith and fair dealing claim was "merely duplicative" of Peabody's claim for breach of the Option Agreement because both claims relied upon the same factual allegations. Indeed, the complaint alleges precisely the same facts for both claims. As a result, it was

**2.** In making his argument that the sale of WPI to American Media Operations, Inc. was the "functional equivalent" of a Tag Sale that triggered the liability of WPI's successor in interest, Peabody relies upon Section 12 of the Settlement Agreement (attaching liability to WPI's successors) and Section 2.6 of the Option Agreement. Section 2.6, in the event of a "capital reorganization, consolidation or merger of WPI with any other corporation or corporations, or any sale of all or substantially all of the assets of WPI to any other corporation or corporations," would have compelled WPI to grant Peabody, "in lieu of any Common Stock, the shares, securities, or oth-

er assets or property (including cash) . . . issuable or payable" as a result of the "reorganization, consolidation, merger or sale. . . ." This argument is unavailing because Section 2.6 makes Peabody's exercise of his option (something that could only have occurred following an IPO—an event that, all agree, never occurred) a condition precedent. Because the condition precedent never came to fruition, Peabody's rights under Section 2.6 never vested. He is therefore entitled to nothing "in lieu of any Common Stock," and successor-in-interest liability under Section 12 does not attach.

entirely proper under New York law for the District Court to dismiss the good faith and fair dealing claim as duplicative of the breach of contract claim. *See Jacobs Private Equity, LLC v. 450 Park LLC,* 22 A.D.3d 347, 347–48, 803 N.Y.S.2d 14 (1st Dep't 2005), *lv. denied,* 6 N.Y.3d 703, 811 N.Y.S.2d 336, 844 N.E.2d 791 (2006); *Cerberus Int'l, Ltd. v. BancTec, Inc.,* 16 A.D.3d 126, 127, 791 N.Y.S.2d 28 (1st Dep't 2005). Consequently, Peabody's contention that genuine issues of material fact exist with respect to his good faith and fair dealing claim does no more than repeating his argument that such issues exist with respect to his breach of contract claim. To the extent that Peabody is seeking to allege new or different facts, the proper means of doing so is in a motion to amend his complaint under Federal Rule of Civil Procedure 15(a), not in his brief on appeal.

■ Although Peabody did not seek to amend his complaint to allege facts sufficient to assert a good faith and fair dealing claim, he unsuccessfully sought to amend his complaint to assert a fraud claim. In so doing, Peabody argued that he was fraudulently induced into settling with Weider and entering into the Option Agreement because Weider did not divulge enough information about the status of its Employee Incentive Plan ("EIP"). It is undisputed that Peabody negotiated the terms of the Option Agreement to protect himself if and when such a plan became effective after he entered into the Option Agreement. The parties nevertheless disputed precisely when the EIP went into effect. On September 15, 2004, the District Court denied Peabody's motion without prejudice to renewal following limited discovery on the issue.

We review the denial of a motion to amend the complaint for an abuse of discretion.[3] *See Kassner v. 2nd Avenue Delicatessen Inc.,* 496 F.3d 229, 242 (2d Cir. 2007). Given the factual dispute about when the EIP actually had taken effect, the District Court properly denied without prejudice Peabody's motion for leave to amend his complaint during discovery. In so doing, the District Court granted Peabody the right to pursue discovery on the limited issue of precisely when the EIP became effective and the extent to which, if any, such a change may have affected his rights under the Option Agreement. At the time, Peabody's counsel stated that he and his client were "very comfortable with the resolution of the issue." It is unclear from the record what discovery Peabody pursued, but the docket sheet of the District Court reveals that Peabody never sought leave to amend his complaint thereafter. Furthermore, the District Court did not grant summary judgment in favor of Weider until December 22, 2006, over two years after denying Peabody's motion to amend his complaint. Given these circumstances, we cannot conclude that the District Court exceeded its allowable discretion in denying Peabody's motion to amend his complaint.

In sum, we have considered all arguments presented by Peabody in this appeal and find them to be without merit. For the foregoing reasons, we AFFIRM the judgment of the District Court.

---

3. In his brief, Peabody argues that the District Court based its denial of his motion to amend the complaint on the legal conclusion that such a motion was futile. However, nothing in the transcript of the motion hearing before the District Court indicates any such conclusion. To the contrary, the District Court denied the motion without prejudice and ordered discovery on the limited issue of when the EIP became effective because the District Court wanted to know more facts before "address[ing] ... legal arguments."