Michael GUIPPONE, on behalf of himself and all others similarly situated, Plaintiffs,

v.

BH S & B HOLDINGS LLC, et al., Defendants.

No. 09 Civ. 1029 (CM).

United States District Court, S.D. New York.

Jan. 5, 2010.

Rene Sara Roupinian, Jack A. Raisner, Outten & Golden, LLP, New York, NY for Plaintiffs.

Richard A. Stieglitz, Jr., Dechert, LLP, Peter C. Moskowitz, Jackson Lewis, LLP, Richard P. Swanson, Arnold & Porter, LLP, Israel Dahan, Cadwalader, Wickersham & Taft LLP, Owen L. Cyrulnik, Grais & Ellsworth, LLP, New York, NY, Philip Selden, Justin S. Antonipillai, Marjorie Levine, Arnold & Porter, LLP, Washington, DC, for Defendants.

## DECISION AND ORDER DISMISSING THE COMPLAINT WITHOUT PREJUDICE / AND SETTING A SCHEDULE FOR A NEW COMPLAINT

McMAHON, District Judge.

### *INTRODUCTION*

The facts relevant to the pending motion to dismiss in this Worker Adjustment and Retraining Notification Act ("WARN Act") case are as follows:

In August 2008, defendant BH S & B Holdings LLC purchased the assets of a corporation known as Steve & Barry's Manhattan LLC ("Steve & Barry's") (Compl. ¶ 12)—whose business is not specified in the complaint, but who is identified in a brief as running a chain of discount fashion clothing stores—from its prior owner. (Pl. Mem. of Law in Opp. to Mot. to Dismiss ("Plaintiff's Brief"), Nov. 20, 2008, at 1.) The Asset Purchase Agreement entered into by the parties specifically provided that, "Purchaser desires to purchase substantially all the assets ... of the Sellers *with the present intention of operating the Business as a going concern.*" (Debtors' Mem. of Law in Supp. of Mot. to Dismiss ("Debtors' Brief"), Apr. 24, 2009, Ex. 5 at 1 (emphasis added).) The Employee and Employee Benefits sections of the Asset Purchase Agreement reflect as much, going so far as to refer to the individuals who worked for Steve & Barry's prior to the sale as "Transferred Employees" for employee benefits purposes. (*Id.* at 41–42.)

Three months after the sale, on November 17, 2008, the defendants fired all of these carryover employees without giving them notice under the WARN Act, 29 U.S.C. § 2102(a)(1), which requires employers to provide sixty days advance notice of plant closings and mass layoffs. (Pl. Br. at 1; *see also* Compl. ¶ 20.)

The terminated plaintiffs brought a class action the next day, suing both the purchaser defendant (who at that time was not yet in bankruptcy) and three of its affiliates (BHY S & B Intermediate Hold-Co LLC, Bay Harbor Management LC and York Capital Management[1]), and seeking damages for violations of the WARN Act. (Pl. Br. at 2; *see also* Compl. ¶ 13.) On November 19, the BH S & B Holdings LLC filed a Chapter 11 petition, as did a related entity, defendant BHY S & B Intermediate HoldCo LLC (collectively, the "Debtor Defendants"). (Pl. Br. at 2.) Plaintiffs' action was immediately discontinued, and on November 20, it was refiled as an Adversary Proceeding in the United States Bankruptcy Court for the Southern District of New York. (*Id.*) Thereafter, all parties agreed that the case should be litigated before this Court, so on

---

1. Defendants have pointed out, and it appears to be uncontested, that York Capital Management is a d/b/a for other entities and sometimes generically for the family of funds commonly advised by and known as "York Capital." The York Capital affiliate that invested in the Steve & Barry's venture was actually known as YSOF S & B Investor, LLC. (Non–Debtors' Mem. of Law in Supp. of Mot. to Dismiss ("Non–Debtors' Brief"), Apr. 24, 2009, at 5 n. 7.) This Court has been advised that plaintiffs intend correct the administrative error in the caption in future filings, but for ease of reference, this Court will continue to use "York Capital Management" to refer to the relevant entity until such change occurs.

February 19, 2009, the case was reinstated on the Court's docket. (*Id.* at 3.) One month later, on April 15, 2009, this Court granted an uncontested motion to withdraw the reference. (*Id.*)

On April 24, 2009, both sets of defendants filed motions to dismiss the complaint. (*Id.*) Defendants argue that the plaintiff class was not entitled to WARN notification because the class members qualified as "part time employees." (*See generally* Non-Debtors' Br. at 6–12; Debtors' Br. at 4–8.) That is, they had been employed by the defendant-purchasers for less than six months—even though they had been employed by Steve & Barry's for much longer, some for years and years. (*Id.*)

The defendants are wrong about the reach of the WARN Act, and the Court denies their motions to dismiss with prejudice on that ground. The Court agrees with defendants that the complaint is deficiently pleaded and requires remediation; I therefore grant the motions to dismiss without prejudice so that plaintiff can serve and file a complaint that incorporates necessary factual allegations from its brief into the pleading itself.

### FACTS

According to plaintiff's opposition brief, Steve & Barry's is a chain of discount clothing stores that has operated for many years out of, among other places. Port Washington, New York (in the Eastern District of New York) and Columbus, Ohio. The complaint itself contains no allegation whatever about the business of Steve & Barry's.

On or about August 22, 2008, the United States Bankruptcy Court for the Southern District of New York (Gropper, J.) entered an order authorizing, inter alia, an asset sale by a business known as Steve & Barry's Manhattan LLC and its debtor affiliates. The terms of the purchase were set forth in an Amended and Restated Purchase Agreement (the "Agreement" or "Purchase Agreement") dated August 21, 2009, among S & B Industries, Inc. and certain of its affiliates ("Sellers"), Hilco Merchant Resources LLC and Gordon Brothers Retail Partners LLC on behalf of a certain joint venture controlled by them (collectively the "Sub-Agent") and defendant BH S & B Holdings LLC ("Buyer" or "Purchaser" or "BH S & B"). Buyer was incorporated in July 2008 for the express purpose of purchasing certain assets of the Sellers.

The Preamble to the Agreement begins: "WHEREAS, Purchaser desires to purchase substantially all of the assets and assume certain leases and other obligations of the Sellers with the present intention of operating the Business as a going concern." (Debtors' Br. Ex. 5 at 1.)

The "Purchased Assets" listed in Article 2 of the Agreement included almost all of Sellers' accounts receivable, their inventory, their purchase orders, deposits and prepaid charges and expenses, all of Sellers' rights under certain leases, together with all improvements, fixtures and related appurtenances (including furniture and equipment); Sellers' intellectual property, their contracts, their cash their business permits. (*Id.* at 14.) Plaintiffs characterize this as all or substantially all of the assets of the Sellers (Pl. Br. at 14); whether that is in fact the case is irrelevant at this moment, because the Court finds that such a characterization is not inconsistent with the terms of the Agreement and assumes it to be true.

The Purchase Agreement provided that BH S & B could hire any, all or none of the employees of Steve & Barry's. (*Id.* at 41.) It required the Seller to provide information about its existing employees to the Purchaser, who would then "deliver, in writing, an offer of employment to those

Employees as determined by Purchaser in its sole discretion. The new employment of each Employee who accepts Purchaser's offer of employment shall commence with effect from the Closing Date...." *Id.* (§ 9.1(b).) These continuing employees are referred to as "Transferred Employees" (*id.*), and their employee files (but not the employment files of anyone who did not receive an offer of employment from BH S & B) fall within the definition of "Purchased Assets" of Steve & Barry's. (*See id.* at 15 (§ 2.1(k)(1)).)

Plaintiff alleges that he was employed at a facility operated by "defendants" in Port Washington, New York. (Compl. ¶ 6.) He does not allege how long he was employed at the facility. (*Cf. id.*) Since he sues under the WARN Act, I will assume that he worked at the facility, or for Steve & Barry's, under the prior owners. However, this is just one of many details that will have to be cleared up in an amended pleading (see below).

Until on or about November 17, 2008, plaintiff worked for the new owner of the business. (*Id.*) On that day, he—along with numerous others (more than 100)—were fired. (*Id.* ¶ 21.) They were not given notice sixty days in advance of being fired. (*Id.* 28.)

Plaintiff and members of the class he purports to represent allege that defendants—the new owner of Steve & Barry's (BH S & B), the company of which the new owner was a wholly-owned affiliate (BHY S & B Intermediate HoldCo LLC) (*id.* ¶ 13), a company called York Capital Management, whose "principals . . . . oversaw and directed the operations of BH S & B" (*id.* ¶ 14), and a company called Bay Harbour Management LC, an owner of BH S & B whose role is not described with any specificity in the complaint (*see id.* ¶¶ 13–14)—were required to give notice to the Steve & Barry's employees pursuant to the WARN act before engaging in the mass layoff they carried out (*id.* ¶ 25).

In their moving briefs, defendants represent, inter alia, that BH S & B filed in Chapter 7 and began liquidating within ninety days after purchasing the assets of Steve & Barry's Manhattan LLC. (Debtors' Br. at 3.) It is undisputed that plaintiff worked under the new ownership for less than six months.

**The Motion to Dismiss**

Defendants move to dismiss the complaint. The principal (though not the exclusive) thrust of their motions is that whoever might be considered an employer of plaintiff following the August 22, 2008 purchase of Steve & Barry's had no obligations under the WARN Act because that entity/those entities did not employ plaintiff or any other persons who had theretofore been employed by Steve & Barry's for six months prior to dismissing them. This, according to defendants, rendered them "part time" workers, who are not counted toward the number of workers required to meet the WARN Act's threshold for giving notice. (*See generally* Non–Debtors' Br. at 6–12; Debtors' Br. at 4–8.) Defendants also move on the ground that the complaint fails to plead sufficient facts to warrant the case's going forward, citing recent Supreme Court jurisprudence on the meaning of notice pleading. (*See generally* Non–Debtors' Br. at 12–18.)

The principal thrust of plaintiff's response to the motions is that the WARN Act applies because he and his co-workers worked for Steve & Barry's for more than six months. (Pl. Br. at 7.) He asserts that the change in ownership is irrelevant; the six month period does not begin to run with the purchase of the business by BH S & B but rather on the day he commenced his employment. (*Id.* at 8.)

Plaintiff does not really respond to the alternative ground for dismissal proffered

by defendants—and I can understand why. The complaint in this case is a model of a deficient pleading. It contains no description of Steve & Barry's (which I gather from the opposition brief is the "entity" for which plaintiff worked). (*See* Pl. Br. at 1.) It contains no statement of how long plaintiff worked for the entity; it does not even specifically plead that plaintiff worked for Steve & Barry's for six of the twelve months preceding September 17, 2008— which (for reasons that will be discussed below) is a critical omission. It does not provide any information about the number of people who worked for Steve & Barry's, or how many worked at the two facilities that are mentioned in the complaint; or whether there are other facilities. All that information is highly relevant, since the duty to give WARN Act notice is a function of the number of full-time employees who work at a particular facility. Next, there is absolutely no *fact-based* indication in the complaint why an entity called BHY S & B Intermediate Holdco LLC is or ought to be a party defendant, other than the fact that it is somehow related to the Purchaser. And there is no *fact-based* explanation of what defendants York Capital Management and Bay Harbour Management LC have to do with any of this, or why they ought to be held liable to plaintiff (who is clearly casting about for a deep pocket).[2]

■ The fact that at least some of the omitted information can be found in defendants' motion papers or in plaintiff's opposition to the motions to dismiss does not cure the pleading defects listed above. *See Peabody v. Weider Publ'ns, Inc.,* 260 Fed.Appx. 380, 384 (2d Cir.2008) (complaint may not be amended via supplemental information in a party's brief).

In short, the complaint would have to be dismissed in any event so that plaintiff could redress numerous pleading deficiencies—deficiencies that would have doomed it even under the old pleading standard applicable to federal complaints, let alone the standards recently announced by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

But defendants make a more basic point. They contend that the WARN Act does not apply to plaintiff's situation because, from the face of the complaint as pleaded, it is apparent that no Steve & Barry's employee—not plaintiff and not any of his co-workers—was or could have been employed by BH S & B for six months. (*See* Non–Debtors' Br. at 6–12; Debtors' Br. at 4–8.) Plaintiff pleads that BH S & B only owned Steve & Barry's for three months before it commenced liquidation, and for just one month on the date when WARN Act notice would have been due. BH S & B purchased the company on August 20, 2008, and if it is liable under the WARN Act, notice should have been given on September 17, 2008. (Pl. Br. at 1–2.) According to defendants, this means that plaintiff and his co-workers were employed by BH S & B for less than six of the twelve months immediately preceding the relevant date, making them "part-time" workers and relieving BH S & B of any obligation under the Act. (*See* Non–Debtors' Br. at 6–12; Debtors' Br. at 4–8.)

If defendants' argument is correct, then there is no sense giving plaintiff an opportunity to file an amended complaint, because amendment would be futile. Therefore, the Court will proceed to consider the

---

**2.** Defendants have advised the Court that Bay Harbour and York Capital Management are investment companies that invested indirectly

in BH S & B (*see* Debtors' Br. at 3), but that information appears nowhere in the complaint.

principal issue raised by defendants' motions.

## DISCUSSION

### I. The WARN Act

The WARN Act provides protection to employees by requiring employers to provide notification 60 calendar days in advance of plant closings and mass layoffs. *See* 29 U.S.C. §§ 2101(a)(1), 2102(a)(1).

Advance notice "provides workers and their families time to adjust to the prospective loss of employment, to seek and obtain alternative jobs, and, if necessary, to enter skill training or retraining that will allow workers to successfully compete in the job market." 20 C.F.R. § 639.1. WARN also provides for notice to dislocated worker units in each State "so that dislocated worker assistance can be promptly provided." *Id.*

To accomplish its goals, the WARN Act bars employers with 100 or more employees from ordering a "plant closing" or a "mass lay-off," each as defined in the Act, unless at least sixty days advance written notice is provided to each employee who will be suffer "employment loss" as a result. 29 U.S.C. §§ 2101(a)(1), 2102(a)(1). The notice must contain:

(1) A statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect.

(2) The expected date when the plant closing or mass layoff will commence and the expected date when the individual employee will be separated.

(3) An indication whether or not bumping rights exist.

(4) The name and telephone number of a company official to contact for further information.

20 C.F.R. § 639.7(d)(1)-(4).

If an employer who orders a plant closing fails to give the required notice, it is liable to each affected employee for 60 days pay and benefits. *See* 29 U.S.C. § 2104(a)(1).

 "Employment loss" means "employment termination, other than a discharge for cause, voluntary departure or retirement," "layoff exceeding six months," or "reduction in hours of work of more than 50 percent during each month of any six month period." The term "employment loss" is meant "to have [its] common sense meaning[ ]" as "the permanent cessation of the employment relationship...." *Int'l Alliance of Theatrical and Stage Employees and Moving Picture Machine Operators, AFL–CIO v. Compact Video Servs., Inc.*, 50 F.3d 1464, 1469 (9th Cir.1995) (*quoting* 54 Fed. Reg. 16,047 (1989) (alterations in original, internal quotations omitted)). The termination of plaintiff's employment and that of his co-workers is thus "employment loss" within the meaning of the statute.

Whether an "employment loss" is the product of a "plant closing" or a "mass layoff" is a function of the number of employees who are affected by the employment action. *See* 29 U.S.C. § 2101(a)(2). A "plant closing" occurs when at least 50 employees are terminated at a single site of employment. *See id.* § 2101(a)(2). A "mass layoff" occurs when there is a reduction in force that is not the result of a plant closing; and that results in an "employment loss" (1) at a single site, for at least 33 percent of the employees and at least 50 employees; or (2) at least 500 employees at multiple sites. *See id.* §§ 2101(a)(3), 2101(a)(8). As long as the requisite number of persons are employed at a single site, (or, the case of a mass

layoff, nationally), WARN Act notice must be given.

However, the WARN Act does not require employers to include "part time" employees in the count of employees affected. The Department of Labor, which is charged under the WARN Act with issuing regulations and guidance for employers, has issued regulations providing that employees who have been employed for fewer than six of the preceding twelve months "are not counted in determining whether plant closing or mass layoff thresholds are reached." 20 C.F.R. §§ 639.6(b); 639.3(h). An employee is considered "part-time" if he was employed for (1) an average of fewer than 20 hours per week or (2) fewer than six of the twelve months preceding the date on which notice is required. 29 U.S.C. § 2101(a)(8).

With this statutory framework in mind, the Court turns to the motion to dismiss.

## II. The Motion to Dismiss

Defendants take the position that plaintiff and other similarly situated persons who worked for Steve & Barry's under its prior ownership qualify as "part-time" under the WARN Act. The reason: far from having worked for BH S & B (Purchaser) for six months, they were employed for less than one month by the date WARN Act notice would have been required if the Act applied (September 17, 2008, which is 60 days before November 17, 2008).

Plaintiff demurs. He insists that he has been working for Steve & Barry's for years (or I gather he would so assert if the Court would allow him to amend his pleading). He contends that the change of ownership is irrelevant; since he was not a part-time employee of *Steve & Barry's, the enterprise,* he (and others like him) were entitled to WARN Act notice from the business' new owner.

I can well understand why, from plaintiff's perspective, the change in ownership,

and the fact that he was required to "apply" for his job after the asset sale, ought to be irrelevant. Nothing changed for Mr. Guippone after the Bankruptcy Court approved the sale. He got up the next morning and went to his customary place of business, where he performed the same tasks for the same enterprise that he had performed the week and month and perhaps year (or years) before. He worked for Steve & Barry's in Port Washington before the asset purchase; he worked for Steve & Barry's in Port Washington after the asset purchase.

Furthermore, the persons who do not have to be counted toward the WARN act threshold are persons who were "employed" (which means "worked") for less than six months during the twelve months preceding the date when notice should have been given. *See Palmer v. Reese Bros., Inc.,* 160 Fed.Appx. 173, 176 (3d Cir.2005). It is apparent (at least from his brief in opposition to the motion) that plaintiff was "employed" at Steve & Barry's during the entire twelve month period preceding the closure of the business, working in the same place, doing the same job. Different people owned the business during that period, but the definition of "part time employee" does not literally exempt multiple owners; rather, it focuses on the length of time that the employee worked.

Plaintiff also observes the WARN Act defines an "employer" as "any business enterprise" that employs (i) 100 or more employees, excluding part-time workers, or (ii) 100 or more employees who in the aggregate work at least 4,000 hours per week exclusive of overtime. *See* 29 U.S.C. § 2101(a)(1). A business enterprise, plaintiff argues, is the business operation—in this case, Steve & Barry's—not the owner of the business; so it is the enterprise itself that is the "employer" for WARN

Act purposes. "Implicit in this definition," plaintiff urges, "is the idea that workers are considered employees of the business operation for the full length of their tenure, despite changes in ownership, directors, stockholders or management." (Pl. Br. at 7.) Plaintiff cites a number of cases for this "implicit" proposition, as well as one key provision of the WARN Act.

The statutory provision on which plaintiff relies is found at 29 U.S.C. § 2101(b)(1), which provides as follows:

### EXCLUSIONS FROM DEFINITION OF EMPLOYMENT LOSS

In the case of a sale of part or all of an employer's business, the seller shall be responsible for providing notice for any plant closing or mass layoff ... up to and including the effective date of the sale. After the effective date of the sale ....the purchaser shall be responsible for providing notice for any plant closing or mass layoff.... Notwithstanding any other provision of this chapter, any person who is a [full-time] employee of the seller ... as of the effective date of the sale shall be considered an employee of the purchaser immediately after the effective date of the sale.

*Id.*

Since Warn Act notice is required only when employees suffer "employment loss," this *exclusion* means that the technical termination of an employee's relationship with the seller of a business does not constitute the "loss" of employment if it is followed by the commencement of an employment relationship with the purchaser.

Defendants respond that plaintiff fails to understand the "well-established principle of employment law" that when Company A purchase the assets of Company B, and then puts some or all of Company B's employees on its payroll, the old period of employment ends and a "new" employment period begins. (Debtors' Br. at 6, citing *Bennett v. Gill & Duffus Chems.,* *Inc.,* 699 F.Supp. 454, 458 (S.D.N.Y.1988) and *Meson v. GATX Tech. Services Corp.,* 507 F.3d 803, 804 (4th Cir.2007).) They argue that section 2101(b)(1) has nothing to do with whether plaintiff qualified as a part-time employee for the first six months after the sale of the business and so question plaintiff's reliance on the statute.

The problem with defendants' argument is that if there is no loss of employment by operation of section 2101(b)(1), no new period of employment begins, either. It is logically impossible to start a new period of employment if one's old period of employment did not end. And if there is no new period of employment upon the sale of a business for WARN Act purposes, then one would logically aggregate the number of months worked for the business under its old and new ownership in determining whether an employee qualified as "part time" for WARN Act purposes.

But defendants urge the Court to reject this compelling logic. They claim, in effect, that section 2101(b)(2) speaks only to the termination of a seller's liability for WARN Act notice by virtue of the sale. Specifically, they point out that the Department of Labor, which is charged under the WARN Act with issuing regulations and guidance for employers, *see* 29 U.S.C. § 2107(a), has promulgated regulations providing that "although a technical termination of the seller's employees may be deemed to have occurred when a sale becomes effective, WARN notice is only required where the employees, in fact, experience a covered employment loss." 20 C.F.R. § 639.6. However, this regulation appears directed at only one thing—the seller's lack of obligation to give WARN Act notice sixty days before consummating a sale of its business. It does not address whether a carryover employee has to be on the purchaser's payroll for six months be-

fore he will be deemed a "full-time" employee for WARN Act purposes.

Defendants also argue that cases interpreting section 2102(b)(1)—cases on which plaintiff relies in making his argument—address only issues of "technical termination" (i.e., claims asserting that employees who continued in their jobs after a sale were fired by their prior employer, or by some related party). (*See* Debtors' Reply Brief in Supp. of Mot. to Dismiss ("Debtors' Reply"), June 5, 2009, at 8.) From this, they conclude that 2102(b)(1) has nothing to say about the full or part time status of employees under the new owner of a business enterprise during the first six months after the sale of a business—and therefore should be disregarded entirely. (*See id.* at 8–10.)

The cases to which defendants refer come from five Circuit Courts of Appeals: the Sixth, Seventh, Eighth, Ninth and Tenth Circuits. And the defendants are correct: none of these courts discussed the issue that confronts this Court.

In *Headrick v. Rockwell Int'l Corp.,* 24 F.3d 1272 (10th Cir.1994), the Court (in the person of retired Supreme Court Justice Byron White, sitting by designation) found (1) that the United States' transfer of responsibility for managing the Rocky Flats Nuclear Power Plant from Rockwell International to a new entity constituted a "sale" for purposes of section 2101(b)(1); and (2) Rockwell (the "seller" in this "sale") was not liable to give WARN Act notice, since by virtue of section 2101(b)(1), its former employees were deemed employees of the new manager as soon as the new contract went into effect and so suffered no "employment loss." *Id.* at 1280.

Then, in *Int'l Alliance of Theatrical and Stage Employees v. Compact Video Servs.,* 50 F.3d 1464 (9th Cir.1995), the court concluded that no "employment loss" occurred within the meaning of the WARN Act when almost all of the unionized seller's (Compact's) employees were invited to remain employed by the business' nonunionized purchaser—albeit with lesser pay and benefits. *Id.* at 1468. The fact that the sale altered the workplace's unionized character was deemed inconsequential for WARN Act purposes. *Id.* The panel also rejected the argument that the diminution of pay and benefits that accompanied the sale constituted a "significant change[ ] of any kind" in the employment relationship, *id.* at 1467; the court announced, "the modification of employee salaries is not a WARN event," *id.* at 1469.[3]

Two years later, in *Wiltz v. M/G Transport Servs., Inc.,* 128 F.3d 957 (6th Cir. 1997), the Sixth Circuit effectively held that the parties to the sale of a business could not "draft their way around" the sales exception. Specifically, the court ruled that employees who continued or had opportunity to keep their jobs after a business sold its assets did not suffer "employment loss," even though the agreement between the parties (much like the Purchase Agreement here) required the Seller to "terminate or permanently layoff all of the employees associated with the Purchased Assets, which termination or layoff shall be effective upon or prior to closing," and the seller (like Steve & Barry's here) advised its work force that the buyer "has agreed to accept applications from our employees and we continue to be hopeful that a large percentage of M/G employees will be employed by Ingram." *Id.* at 959. De-

---

**3.** Significantly for our case, the majority of the Ninth Circuit panel also rejected the dissenter's view that section 2101(b)(1) did not apply to sales of assets, as opposed to sales of businesses. Defendants have suggested that the fact that they purchased assets, rather than an ownership interest in the prior owner, is a difference that makes a difference. It seems clear that they are wrong.

fendant prevailed because (1) section 2101(b)(2) .... and (2) 50 persons did not suffer "employment loss" at a single site; all but 24 of the seller's 160 employees either continued or had the opportunity to continue their employment with the business' purchaser. *Id.* at 965. The court gave short shrift to any suggestion that the terms of the purchase agreement were at all relevant to the issue before it—which is hardly surprising, since one cannot draft one's way around an obligation imposed by statute.

In *Int'l Oil, Chemical & Atomic Workers, Local 7–517 v. Uno–Ven Co.,* 170 F.3d 779 (7th Cir.1999), the Seventh Circuit (Posner, C.J.) agreed with the Tenth Circuit's logic as articulated in *Headrick,* 24 F.3d 1272 (10th Cir.1994), that handing over operations of an enterprise (in that case, a refinery) to a new manager was the equivalent of a sale for WARN Act purposes. *See Int'l Oil,* 170 F.3d at 783–84. The court also agreed with the Ninth Circuit's reasoning in *Int'l Alliance,* 50 F.3d 1464, that, "not every change in the terms and conditions of work is an 'employment loss.' " *See Int'l Oil,* 170 F.3d at 784. But Judge Posner described these WARN Act issues as "subsidiary" in the case before him, *id.* at 780; the question that occupied center stage in his opinion was whether the new operator was bound by a collective bargaining agreement that had been in force when the prior operator ran the refinery.

Finally, in *Wilson v. Airtherm Prods., Inc.,* 436 F.3d 906 (8th Cir.2006), the Court of Appeals held that a seller had no duty under the WARN Act to provide sixty days prior notice in connection with the sale of the employer's plant simply because the seller did not obtain from the buyer a commitment to hire its employees after the sale concluded. *Id.* at 912. The panel observed that, when a business is sold as a going concern (as is the case in the suit at bar), section 2101(b)(1) "creates a presumption" that the buyer is the employer for WARN Act purposes "if the seller still employs its employees on the day of the sale." *Id.* at 911. In *Wilson,* the seller kept the employees on the payroll until the date the sale concluded; the buyer accepted applications from old employees immediately after the sale concluded; and a "substantial number" of Airtherm's employees were hired into their old jobs within 30 days. *Id.* at 908–09. These facts justified the presumption created by the statute.

Obviously, none of those cases is the same as this case. In none of those cases did a purchaser close down the business it bought within the first six months of ownership, and in none of those cases was the purchaser (as opposed to the seller) sued for failing to give WARN Act notice. Additionally, the issue of whether the employees had to be on the purchaser's payroll for six months before the purchaser would have to count them toward the WARN Act's threshold was not discussed in any of the cases. Indeed, the principal lesson this Court can take from the cases discussed above is that Steve & Barry's Manhattan LLC, the Seller (and plaintiff's former employer), was not required to give WARN Act notice before it sold substantially all of its assets and ceased to be liable under the WARN Act from and after the date of the sale: August 20, 2008. But that we could discern simply by reading section 2101(b)(1).

It would be logically fallacious to leap from this to the conclusion that section 2101(b)(1) has nothing to do with whether defendants (or at least BH S & B) were obligated to give their employees WARN Act notice before they closed down the business. The cases discussed above offer little (albeit not no) learning on whether, by virtue of the definition of "part time

employee," the purchaser of a business or its assets enjoys an automatic exemption from the duties that the WARN Act imposes on it for the first six months after it closes the deal—which is what defendants are in effect arguing. That appears to be a question of first impression, in this and every circuit.

This Court finds utterly unpersuasive defendants' suggestion that they enjoy any respite from an enterprise's WARN obligations, or that the protections of the Act cease to exist until persons who were employed by the business prior to the sale have worked for the new owner for six months.

The cases that defendants cite to support their argument—which depends entirely on the WARN Act's definition of "part-time" employment—turn out to have nothing to do with that definition of "part time employee" or with any "six month rule." For example, in *Bennett v. Gill & Duffus Chems., Inc.*, 699 F.Supp. 454 (S.D.N.Y.1988), the employees of a sold company contended that they were entitled to receive severance pursuant to an employee benefit plan that was in effect at the company prior to the sale. *Id.* at 455. The Plan Administrator disagreed, and the employees used under ERISA (not the WARN Act) to recover the severance they had been denied. *Id.* Judge Sand of this District concluded that the plaintiffs were entitled to severance because their employment had in fact ended upon the sale of the company—even though they had become reemployed by the purchaser of the business—because of the "so-called 'sale of business rule,'" pursuant to which employees are automatically severed from their old employer and then (perhaps) rehired by the new employer. *Id.* at 458.

*Bennett* is not a useful precedent for this case, however, because section 2101(b)(1) was designed to overcome the usual rule—the sale of business rule—solely and exclusively for WARN Act purposes. Senator Orrin Hatch, the section's sponsor, made that clear:

> There is no question that [under the prior draft's language], when a business is sold to another company and the employees go off the old company's payroll and on the new one, a plant closing for the purposes of this act has taken place. It would seem fairly obvious that if the business continues on as before with no significant changes of any kind, that there would be no need to go through the formal notification process. But that is not how the [prior draft] bill works.... My amendment clarifies these points, I think. First, it clearly states that only a plant closing or a mass layoff as defined in this act, after the effective date of sale, would trigger the notice requirements.... Second, it assigns liability for providing 60 days' notice of a closing or layoff after the effective date of sale to the purchaser. It basically defines that [as] an assignment of liability.

134 Cong. Rec. 16026, 16104–05 (1988).

Clearly, Senator Hatch added section 2101(b)(1) to the statute *to overturn the usual rule—the sale-of-business rule—for the limited purpose of establishing WARN Act liability.* It was specifically designed to prevent employees from urging courts to conclude that workers who shifted from one employer to another as a result of a sale had "lost" their employment and commenced "new" employment. The "sale of business" rule applied in *Bennett only* because ERISA contains no provision similar to section 2101(b)(1).

Defendants also cite the Fourth Circuit's decision in *Meson v. GATX Tech. Servs. Corp.*, 507 F.3d 803 (4th Cir.2007), but in the WARN context, that case stands for nothing more consequential than that the plaintiff became employed by the purchas-

er rather than the seller on the effective date of the purchase. There was no plant closure within the first six months of defendant GATX's ownership (which began in 2001, with the termination of plaintiff's employment occurring in 2004). Whether the definition of "part time" employees gives new purchasers a *de facto* exemption from WARN Act liability for the first six months of ownership was not an issue in the case.

Defendants assert that at least one court has concluded that the sale-of-business rule applies in the context of a WARN claim brought against the purchaser of a business. In *Atomic Workers Int'l Union v. CIT Group/Capital Equip. Fin., Inc.,* 898 F.Supp. 451 (S.D.Tex.1995), Refinery Holding Company ("RFC") purchased the assets of a bankrupt company, El Paso Refinery, L.C. ("EPR"), out of bankruptcy, just as BH S & B did here. *See id.* at 456. But in *Atomic Workers,* the purchaser did not try to operate the purchased business; it shut down EPR's facilities immediately after purchasing them and did not enter into an employment relationship with any of the seller's former employees for even one day. *Id.* at 454. The court held that RFC, the purchaser, did not have to give WARN Act notice to EPR's employees, even though all of them lost their jobs upon the sale. *See id.* at 458.

But as the plaintiff points out, the Texas court did not ground its ruling in the fact that RFC had employed the seller's personnel for less than six of the twelve months preceding the date WARN Act notice was due. Rather, the purchaser in *Atomic Workers* had no obligation to give WARN Act notice because it never employed them at all. "None of EPR's employees was transferred to the employ of any Defendant by reason of the ... foreclosure sale." *Id.* at 457. As the court pointed out, the buyer never "exercised any employer functions with regard to

Plaintiffs, such as hiring, firing, supervising, or paying them." *Id.* at 455 (citation omitted).

The Texas court's decision might be questioned based on the literal language of section 2101(b)(1), but that is irrelevant for our purposes. The facts before this court are very different than those of *Atomic Workers.* BH S & B bought the assets of Steve & Barry's with the stated intent of running the business as a going concern and it carried out that intention. It kept plaintiff and his co-workers on for several months—hiring them, supervising them and paying them—albeit in pursuit of what turned out to be a quixotic goal (turning the business around) that this goal was shortly abandoned.

The facts of *United Mine Workers of Am. v. Florence Mining Co.,* 855 F.Supp. 1466 (W.D.Pa.1994), another case on which defendants rely, are both convoluted and similarly unhelpful to their cause. In that case, when utility companies cancelled a supply contract with Florence on October 29, 1991, the company shut down production immediately and gave its employees sixty days WARN Act notice that it would be closing its facilities at the end of December. *Id.* at 1468. The employees were paid through December 31, but they ceased to work on October 30. *Id.* Eventually, the utilities agreed to a new short-term supply contract, which extended only through the end of December 1992. *Id.* The employees returned to work so that Florence could carry out this contract. *Id.* at 1468–69. The facilities reopened on various dates during 1992, starting in the middle of April. Florence's facilities shut down for good on December 31, 1992. *Id.* The Union sued on behalf of its members, seeking damages for failure to give WARN Act notice on October 31, 1992, which was sixty days prior to the shutdown. *Id.* at 1469.

The court ruled that, because of the closure of the facilities between October 31, 1991 and various dates in 1992, at least 50 employees at any Florence facility had not been "employed" (which it defined as "worked") for as long as six of the twelve months preceding October 31, 1992—the date WARN Act notice allegedly should have been given. *Id.* at 1476–77. It was for that reason that the statute did not apply—not because employees who actually worked during the few months in 1991 when the facilities were open had been employed by a former owner for part of the period.[4]

In short, the cases on which defendants rely do not advance their argument.

Plaintiff has also not found any directly apposite judicial precedents.[5] But his position is far more persuasive. It is congruent with the plain language of the statute; it is (as I have already said) logically compelling; and it accords with various statements made by Senator Hatch when he introduced section 2101(b)(1).

For example, Senator Hatch stated that, "only a plant closing or a mass layoff [that occurs] ..... *after* the effective date of sale, would trigger the notice requirements." Senator Hatch did not say that only a plant closing or mass layoff that occurs *more than six months after the sale* would require notice. But surely that is what he would have said if his intent was to exempt the new owner from WARN Act liability until it had owned the newly-purchased business for at least six months.

The Senator also said, "[My amendment] assigns liability for providing 60 days' notice of a closing or layoff after the effective date of sale to the purchaser." The words *"assignment of liability"* can only be read to suggest that when losses of employment occur within the first few months after the sale of a business—the only period during which it might be argued that the seller, rather than the buyer, remains liable to its former employees—the purchaser assumes the liability that would otherwise have fallen on the seller. Justice White gave this concept credence in *Headrick* when he said that "Under [section 2101(b)(1) ], the obligation to warn employees in the event of a closure of mass layoff *skips* from seller to buyer, never triggered by any sale." 24 F.3d at 1280 (emphasis added).

In proposing section 2101(b)(1), Senator Hatch was concerned that what Justice White described as "adventuresome plaintiffs" would try to subvert the WARN Act by taking advantage of a technicality to expand its coverage to cases where workers did not really lose their jobs after a business was sold. Senator Hatch solved that problem by eliminating the technical argument that employees who transfer from a seller's payroll to a buyer's "lose" their employment. Here,

---

4. Much of the case was disposed of on technicalities: (1) a provision of WARN that is inapplicable to this case exempts from the notice requirement plant closings that result from the completion of a particular project or undertaking; (2) the various Florence facilities did not employ as many as fifty full time employees and could not be aggregated into a "single site of employment"; (3) the utility companies (who were also sued) were not the workers' employers because they did not own Florence, they just bought product from it. None of that is relevant to the disposition of this case.

5. Plaintiff cites to *Roeder v. United Steelworkers of Am.*, 162 B.R. 121 (Bankr.W.D.Pa. 1993), and argues that the court in that case aggregated time spent working for both the seller and the buyer of a facility (Bishop Tube). But in that case the purchaser/debtor (Old Electroalloy) purchased the Bishop Tube plant in December 1989 and did not announce that it would cease operations at Bishop Tube until January 22, 1991—well over a year later.

what I will term an "adventuresome defendant" tries to eviscerate the protections afforded by the WARN Act by arguing that there can be a termination of employment even though there was no "employment loss" as a matter of law because the purchaser kept the business running for a time. That cannot be the case. Just as the employees of the seller (Steve & Barry's Manhattan LLC) suffered no "employment loss" when they were kept on after the sale, so too the purchaser—by "assignment," to use Senator Hatch's term—succeeded to the obligations imposed by the WARN Act from the moment the sale closed. Just as there is no gap in employment for WARN Act purposes when a business operates as a going concern after a sale, so too there is also no gap in WARN Act coverage for employees who continue to work for that business after the sale.

■ Defendants also suggest that BH S & B contracted its way out of WARN Act liability, by including in the Purchase Agreement a clean rehire of plaintiff and his coworkers without any successor liability under the statute. The short answer is that a purchaser of a going concern cannot contract away its liability under a statute passed by Congress. The Eighth Circuit has twice rejected similarly creative attempts to circumvent the WARN Act by contract. *See Wilson v. Airtherm Prods., Inc.,* 436 F.3d at 912 & n. 4; *Smullin v. Mity Entes., Inc.,* 420 F.3d 836, 839 (8th Cir.2005). And in any event, as plaintiff points out, the parties' contract contains numerous provisions indicating that BH S & B intended to hire the Steve & Barry's personnel; the buyer and seller even expressly agreement to cooperate so as to "ensure the continuity of the workforce of the Business." (Debtors' Br. Ex. 5 at 41 (§ 9.1(d)).)

For these reasons, the Court will not dismiss the complaint for failure to state a claim on the ground that BH S & B, or any entity associated with it, enjoyed six months of immunity from the burdens of the WARN Act by virtue of the statute's definition of "part time" employment.

However, as stated above, the Court will grant all defendants' motions to dismiss the complaint for failure to plead the facts necessary to state a claim under the new pleading regimen imposed by the Supreme Court. Nearly all of what is missing from the complaint is set out earlier in this opinion. I imagine plaintiff will easily be able to plead the necessary information about Steve & Barry's and about his own employment situation. It may not be quite so easy for plaintiff to surmount the hurdles to keeping the investing entities in the case as defendants. Plaintiff must plead at least some non-conclusory facts tending to show that Bay Harbour Management and York Capital Management satisfy the standard for being considered "joint employers." Any difficulty they may have in doing so does not relieve them of the burden of complying with the new rules of pleading.

### *CONCLUSION*

The motions to dismiss (docket nos. 7 and 9) are granted without prejudice for the reasons stated above. The Clerk of the Court is instructed to close these motions and remove them from the Court's outstanding motion list. Plaintiff has twenty days from the date of this opinion to file an amended complaint.

This constitutes the decision and order of the Court.