12-183-cv
Guippone v.  BH S&B Holdings LLC

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2012

(Argued: November 15, 2012          Decided: December 10, 2013)

Docket No.  12-183-cv
_____

MICHAEL GUIPPONE, INDIVIDUALLY AND ON BEHALF OF ALL
OTHERS SIMILARLY SITUATED,

*Plaintiff-Appellant*,

v.

BH S&B HOLDINGS LLC, BHY S&B HoldCo, LLC, BAY HARBOUR
MANAGEMENT LC, BAY HARBOUR MASTER LTD, BH S&B INC., YORK
CAPITAL MANAGEMENT, L.P. AND YSOF S&B INVESTOR, LLC,[1]

*Defendants-Appellees*.

_____

Before: KEARSE, STRAUB, and POOLER, *Circuit Judges*.

Appeal from decisions and orders of the United States District Court for

the Southern District of New York (McMahon, *J.*) dismissing plaintiff's putative

_____

[1] The Clerk of the Court is directed to amend the caption as above.

class action claim brought against defendants for alleged violations of the Worker

Adjustment Retraining and Notification Act ("WARN"). We hold that (1) the

district court correctly determined the private equity defendants were investors,

not "single employers" with their subsidiary within the meaning of WARN, and

thus were properly dismissed; and (2) the district court erred in granting

summary judgment to BHY S&B HoldCo, LLC, which operated the entity

plaintiff worked for, because plaintiff raised a question of material fact as to

whether BHY S&B HoldCo, LLC was a single employer with BH S&B Holdings

LLC.

      Affirmed in part, vacated and remanded in part.

_____

> JACK A. RAISNER, Outten & Golden, LLP (Rene S. Roupinian, *on the brief*), New York, N.Y., *for Appellant Michael Guippone*.
>
> OWEN CYRULNIK, Grais & Ellsworth LLP, New York, N.Y., *for Defendant-Appellee BHY SBHoldCo LLC*.
>
> JUSTIN S. ANTONIPILLAI, Arnold & Porter, LLP (Robert A. Stolworthy, Jr., *on the brief*), Washington D.C., *for Defendants-Appellees YSOF S&B Investor LLC and York Capital Management, L.P.*

POOLER, *Circuit Judge:*

Michael Guippone, individually and on behalf of all others similarly situated, appeals from decisions and orders of the United States District Court for the Southern District of New York (McMahon, *J.*) dismissing his putative class action claim brought against defendants for alleged violations of the Worker Adjustment Retraining and Notification Act ("WARN"). We vacate the district court's grant of summary judgment to BHY S&B HoldCo, LLC ("HoldCo"), entered December 15, 2011, because we find that there is a material question of fact as to whether HoldCo was a single employer with its closely held subsidiary within the meaning of WARN. We affirm the district court's dismissal of the complaint against the remaining defendants for failure to state a claim, entered May 18, 2010.

## BACKGROUND

Unless otherwise indicated, the factual allegations are not in dispute. Guippone worked at Steve & Barry's, a chain of retail apparel stores owned and operated by Steve & Barry's Industries, Inc. ("S&B Industries"). S&B Industries filed for protection from its creditors pursuant to Chapter 11 of the U.S. Bankruptcy Code in July 2008. One group of defendants in this action comprises

3

investment firms Bay Harbour Management LC and its related entities Bay Harbour Master Ltd. and BH S&B Inc. (together, "Bay Harbour"); and York Capital Management L.P. and YSOF S&B Investor LLC (together, "York Capital" or "York"). Bay Harbour and York Capital created a series of interrelated entities to purchase and manage Steve & Barry's after it filed for bankruptcy protection. One of the entities, HoldCo, served as the holding company and sole managing member of another entity, BH S&B Holdings LLC ("Holdings"). Holdings was funded with $70 million from Bay Harbour and York Capital, and an additional $125 million in financing from Ableco Finance LLC ("Ableco"). Holdings employed Guippone and the putative class members.

In August 2008, with approval from the United States Bankruptcy Court for the Southern District of New York, Holdings bought Steve & Barry's assets. Holdings retained a number of Steve & Barry's employees, including plaintiff and the putative class members. Holdings lacked a board of directors of its own. Holdings' senior management consisted of Andy Todd, president, and Gary Sugarman, chief operating officer. The HoldCo board hired the accounting firm J.H. Cohn to act as Holdings' chief financial officer in September, and in October Hal Kahn was hired as Holdings' chief executive officer. Scott Sozio, a member

4

of HoldCo's board and a member of Bay Harbour, served as Holdings' assistant secretary. Other HoldCo board members included: Luis Medeiros, a member of York; Doug Teitelbaum, a member of Bay Harbour; and Jamie Dinan, a member of York.

The parties dispute exactly when and why Holdings faced bankruptcy. Regardless, the record is clear that in mid-October of 2008, lender Ableco exercised its rights under its loan agreement and "swept" roughly $30 million from Holdings' account. On October 31, 2008, Medeiros wrote to Teitelbaum and Sozio that "[w]e strongly believe that in the best interests of York and other shareholders of Steve and Barry's we put in place a liquidating plan immediately." Holdings' financial situation continued to deteriorate rapidly. In early November, Ableco informed HoldCo's board that Ableco intended to call the remainder of its loan, then issued a notice of default. Kahn and Todd were replaced as Holdings' managers on November 7, 2008 by RAS Management Advisors, LLC. ("RAS" or "RAS Management"). Sozio testified that the decision to hire RAS was made by the HoldCo board "to manage the wind-down."

On the same day Holdings hired RAS Management, the HoldCo Board discussed the possibility that Holdings may have to retain bankruptcy counsel,

5

lay off workers, and send affected workers WARN notices.  On November 10,

2008, the HoldCo board passed a resolution stating that:

> the management of [Holdings] ... informed the
> [HoldCo] Board that unforeseeable business
> circumstances, including but not limited to the impact
> on the general economy, and specifically on retail
> spending, of the largest stock market crash since the
> Great Depression, receipt of a notice of covenant default
> on November 6, 2008 from Holdings' senior lenders
> under its existing loan facility, and recent unexpected
> deteriorations in the general condition of Holdings'
> business, have mandated immediate implementation of
> staff reduction by Holdings ....

The resolution continued:

> Resolved, that based on the facts presented by the
> management of Holdings and the advisors to Holdings
> and [HoldCo], the Board has determined in good faith
> that it is in the best interests of the Company to
> authorize Holdings to effectuate the Reduction in Force
> and to authorize Holdings to provide notice in respect
> of the Reduction in Force to each affected employee, as
> soon as reasonably practicable, in consideration of any
> potentially applicable U.S. federal, state or local laws.

On November 19, 2008, at RAS's request, the HoldCo board authorized

RAS to have Holdings file for protection from its creditors pursuant to Chapter

11 of the Bankruptcy Code.  That same day, Holdings filed for bankruptcy.

Holdings began sending WARN notices and termination notices to employees on

6

November 17, 2008, with more notices issued later that same month and in the months following.

The day after his termination, Guippone filed a complaint seeking damages on behalf of himself and others similarly situated. Perhaps as a result of that rush to the courthouse door, the district court described Guippone's first complaint as "a model of deficient pleading." *Guippone v. BH S & B Holdings LLC*, 681 F. Supp. 2d 442, 446 (S.D.N.Y. 2010) ("*Guippone I*"). Guippone's complaint was dismissed without prejudice as facially deficient. *See id.* at 455.

Guippone filed an amended complaint on January 26, 2010. Defendants brought two separate motions to dismiss, one on behalf of the Bay Harbour and York Capital defendants and one on behalf of HoldCo. The district court granted the motion by the equity entities, finding that the amended complaint failed to plead adequate facts to support its claim that the equity investors were employers within the meaning of WARN. *See Guippone v. BH S & B Holdings LLC*, No. 09-civ-1029, 2010 WL 2077189, at * 7 (S.D.N.Y. May 18, 2010) ("*Guippone II*"). The district court denied HoldCo's motion, finding plaintiffs pleaded sufficient facts to allege that HoldCo disregarded Holdings' corporate form and exercised de facto control over the company sufficient to make HoldCo liable under

7

WARN. *Id.* at * 7-8. Claims brought by plaintiff against defendants Holdings and BHY S & B Intermediate HoldCo were settled in October 2011.[2] *See Guippone v. BH S & B Holdings, LLC*, No. 09-civ-1029, 2011 WL 6288396, at *4 (S.D.N.Y. Dec. 15, 2011) ("*Guippone III*").

Following discovery, plaintiff and HoldCo made cross-motions for summary judgment. The district court determined that plaintiff failed to raise a triable question of fact that would allow a jury to find that HoldCo could be held liable pursuant to WARN as a single employer with Holdings. *Guippone III*, 2011 WL 6288396, at * 10. This appeal followed.

## DISCUSSION

"Our standard of review for both motions to dismiss and motions for summary judgment is de novo." *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003) (italics omitted). "Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law." *O & G Indus., Inc. v. Nat'l R.R. Passenger Corp.*, 537 F.3d 153, 159 (2d Cir. 2008) (internal quotation marks and brackets omitted).

---

[2] In October 2008, BHY S & B Intermediate HoldCo LLC replaced HoldCo as the sole member of Holdings.

8

I.      **WARN**

WARN requires employers to give employees 60 calendar days'
notice in advance of plant closings and mass layoffs.  *See* 29 U.S.C. § 2102(a)(1).  It
applies under certain conditions where the employer has 100 or more employees.
*See id.* § 2101(a)(1).  A "plant closing" occurs within the meaning of WARN when
a "permanent or temporary shutdown of a single site of employment" leads to
the loss of employment for at least 50 employees during a 30-day period.  *See id.* §
2101(a)(2). A "mass layoff" occurs when, not as the result of a plant closing, a
reduction in force "results in an employment loss at the single site of
employment during any 30-day period for—[1] at least 33 percent of the
employees (excluding any part-time employees),  and at least 50 employees
(excluding any part-time employees); or [2] at least 500 employees (excluding any
part-time employees)." *See id.* § 2101(a)(3).

As long as the requisite number of terminations is met, WARN notice must
be given.  Under WARN, the requisite notice must contain:

> (1) A statement as to whether the planned action is
> expected to be permanent or temporary and, if the
> entire plant is to be closed, a statement to that effect;
>
> (2) The expected date when the plant closing or mass
> layoff will commence and the expected date when the
> individual employee will be separated;

9

(3) An indication whether or not bumping rights exist;

(4) The name and telephone number of a company official to contact for further information.

20 C.F.R. § 639.7(d)(1)-(4). By requiring advance notice, the WARN Act aims to "provide[] workers and their families some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market," and allows the state to provide prompt assistance to displaced workers. 20 C.F.R. § 639.1(a). Employers who fail to comply with WARN are liable to affected employees for up to 60 days of pay and benefits. *See* 29 U.S.C. § 2104(a)(1). [3]

York Capital argues that we should apply our test from *Coppola v. Bear Stearns & Co.*, where we set out a test for determining whether a creditor was an "employer" within the meaning of the WARN Act, "whether, at the time of the

---

[3] In counting terminated employees, however, WARN does not require employers to include "part-time" employees in the count of employees affected. Employees are considered "part-time" if they were employed for (1) an average of fewer than 20 hours per week or (2) fewer than six of the twelve months preceding the date on which notice is required. 29 U.S.C. § 2101(a)(8). Such employees "are not counted in determining whether plant closing or mass layoff thresholds are reached." 20 C.F.R. § 639.6(b); *see also* 29 U.S.C. § 2101(a)(2)-(3).

plant closing, the creditor was in fact responsible for operating the business as a going concern rather than acting only to protect [its] security interest and preserve the business asset for liquidation or sale." 499 F.3d 144, 150 (2d Cir. 2007)(internal quotation marks omitted). "Only when a lender becomes so entangled with its borrower that it has assumed responsibility for the overall management of the borrower's business will the degree of control necessary to support employer responsibility under WARN be achieved." *Id.* By its plain language, this test is applicable only to lenders, and we decline to extend it to defendants in this case who are not lenders but related or parent entities. We recognize that there is an open question in this Circuit as to what test governs whether a related or parent entity can be considered an employer under WARN.

We now adopt the five non-exclusive factors set forth in the Department of Labor ("DOL") regulations to determine if related entities are single employers, *see* 20 C.F.R. § 639.3(a)(3) as the test to be applied in this Circuit in determining whether WARN liability can be imposed on a parent company. This regulation provides that:

> independent contractors and subsidiaries which are
> wholly or partially owned by a parent company are
> treated as separate employers or as part of the parent or

11

contracting company depending upon the degree of independence from the parent. Some of the factors to be considered in making this determination are (I) common ownership, (ii) common directors and/or officers, (iii) de facto exercise of control, (iv) unity of personnel policies emanating from a common source, and (v) the dependency of operations.

20 C.F.R. § 639.3(a)(2). These factors are useful for courts in determining "whether the nominally separate corporations actually functioned as a single entity with respect to [policy]." *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 503–04 (3d Cir. 2001). In a WARN case like this one, that policy is the decision to terminate the employment of a significant part of a company's work force. These factors are also sensibly applied to determine whether WARN liability is to be imposed on an equity investor, who may similarly exercise control over the termination decision.

In adopting this test, we agree with the Third Circuit that "the DOL factors are the best method for determining WARN Act liability because they were created with WARN Act policies in mind" and "focus particularly on circumstances relevant to labor relations." *Pearson*, 247 F.3d at 490. As in any balancing test, application of these factors requires a fact-specific inquiry, no one factor set out by the DOL is controlling, and all factors need not be present for liability to attach.

12

These factors are identical to ones applied by the district court here, both in deciding the motions to dismiss and the motions for summary judgment. We affirm the district court's application of that test in granting Bay Harbour and York Capital's motion to dismiss, and for the reasons set forth in the district court's thorough opinion. *See Guippone II*, 2010 WL 2077189 at * 4-8 (applying DOL test). With respect to the grant of summary judgment to HoldCo, however, we find the district court committed error in concluding plaintiff failed to raise a triable issue of material fact.

Contrary to the conclusion of the district court, the record evidence raises a question of fact as to whether HoldCo exercised de facto control over Holdings. "The core of this factor is whether one company was the decision-maker responsible for the employment practice giving rise to the litigation." *In re APA Transp. Corp. Consol. Litig.*, 541 F.3d 233, 245 (3d Cir. 2008) (internal quotation marks omitted). The de facto control factor "is not intended to support liability based on a parent's exercise of control pursuant to the ordinary incidents of stock ownership . . . The factor is appropriately utilized, however, if the parent . . . was the decisionmaker responsible for the employment practice giving rise to the litigation." *Pearson*, 247 F.3d at 503–04. "Thus, the 'de facto exercise of control'

13

prong allows the factfinder to consider whether the parent has specifically directed the allegedly illegal employment practice that forms the basis for the litigation." *Pearson*, 247 F.3d at 491.

Plaintiff adduced evidence that Sozio "[didn't] know what the distinction was" between HoldCo and Holdings while he worked with Steve & Barry's. The record evidence indicates that Holdings lacked its own board, and that HoldCo's board of directors chose Holdings' management and negotiated Holdings' financing. Most critically, the evidence, at a minimum, raises a question of fact as to whether HoldCo made the decisions leading to the alleged illegal employment practice. The district court wrongly concluded, as a matter of law, that HoldCo had not made the decision to terminate employees because the HoldCo board was acting on the recommendation of RAS Management in authorizing the reduction in force. *Guippone III,* 2011 WL 6288396, at * 7.

The district court relied on the testimony of Timothy Boates, president of RAS Management. He testified that RAS Management "believed as individuals, myself but certainly as RAS Management, that in light of the problems with respect to store inventory, the inability to generate sufficient cash flow, and the inability to attract incremental investment, that a process of liquidation was

14

appropriate." *Guippone III,* 2011 WL 6288396, at * 8 (internal quotation marks omitted). Boates testified that he "called . . . asking Mr. Sozio for the [HoldCo] board to consider if, in fact, they were going to pursue that path, that we would need more and more authorization in order to enact the recommendations that were made." *Id.* (internal quotation marks omitted).

The district court found this

> testimony plainly shows that RAS merely sought authorization from HoldCo's board to carry out actions that RAS itself had concluded were appropriate. Whether HoldCo came to that conclusion independently—either before or after retaining RAS—is irrelevant, since there is no evidence to suggest that HoldCo ordered anyone to do anything with regard to the layoffs.

*Guippone III,* 2011 WL 6288396, at * 8. We disagree. The record evidence would allow a jury to conclude that Holdings was so controlled by HoldCo that it lacked the ability to make any decisions independently, and that the resolution passed by HoldCo's board "authoriz[ing] Holdings to effectuate the Reduction in Force" was, in fact, direction from HoldCo to Holdings to undertake the layoffs. Authorizing layoffs is not just a prerogative of ownership—it's a function of being an employer, especially where, as here, HoldCo was the sole member and

15

manager of Holdings, and the HoldCo board operated as Holdings' board. There is sufficient evidence in the record to allow a jury to conclude that Holdings was not free to implement its own decisions, and that the layoffs were, in fact, directed by HoldCo.

"[B]ecause the balancing of the factors is not a mechanical exercise, if the de facto exercise of control was particularly striking—for instance, were it effectuated by 'disregard[ing] the separate legal personality of its subsidiary' then liability might be warranted even in the absence of the other factors." *Pearson*, 247 F.3d at 504 (internal citation omitted). Here, there is sufficient evidence from which a jury could conclude that HoldCo directed the layoffs with no regard to Holdings' separate corporate form. Given this, we reverse the grant of summary judgment to HoldCo.

In the alternative, HoldCo urges us to affirm on several grounds not considered by the district court, i.e., that HoldCo falls within the unforeseeable business exception, faltering company or fiduciary liquidation exceptions to WARN. We express no opinion on these alternate arguments and remand to the district court to consider these arguments in the first instance. *See Karedes v. Ackerley Group, Inc.*, 423 F.3d 107, 119 (2d Cir. 2005) (declining to consider on

16

appeal an issue upon which the district court made no ruling, and remanding for the district court to consider in the first instance).

## CONCLUSION

For the reasons given above we affirm in part, and vacate and remand in part. Each side to bear its own costs.

17