Dormitory Authority v. Continental Casualty

# UNITED STATES COURT OF APPEALS

## FOR THE SECOND CIRCUIT

August Term, 2013

(Argued: March 12, 2014     Decided: June 23, 2014)

Docket No. 13-1671 (L), 13-1700 (xap)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

DORMITORY AUTHORITY OF THE STATE OF
NEW YORK,

Plaintiff-Appellee-Cross-
Appellant,

- v.-

CONTINENTAL CASUALTY COM, AKA
CONTINENTAL CASUALTY COMPANY,

Defendant-Appellant-Cross-
Appellee.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Before:	JACOBS, POOLER, <u>Circuit Judges</u>, Román, <u>District Judge</u>.[*]

In this declaratory judgment action between the owner of a building and the insurer of the architectural firm that designed it, the insurer appeals from the judgment of the United States District Court for the Southern District of New York (Forrest, <u>J.</u>), ruling, on summary judgment, that two design flaws in the same structure were not "related." Under the terms of a stipulation between the parties, a separate limit of liability was therefore available to fix each flaw. The building owner cross-appeals the calculation of prejudgment interest. We affirm as to the declaration and vacate as to interest.

<div style="margin-left: 3em;">

RICHARD SIMPSON (Gary P. Seligman and Leland H. Jones IV, <u>on the brief</u>), Wiley Rein LLP, Washington, DC, <u>for Appellant-Cross-Appellee</u>.

JERROLD J. GANZFRIED (Stephen B. Shapiro, Frederick D. Page, Timothy B. Froessel, <u>on the brief</u>), Holland & Knight LLP, Washington, DC, <u>for Appellee-Cross-Appellant</u>.

</div>

---

[*] The Honorable Nelson S. Román, United States District Judge for the Southern District of New York, sitting by designation.

DENNIS JACOBS, Circuit Judge:

Continental Casualty Company issued claims-made liability policies to the architectural firm responsible for designing and overseeing the construction of a building for the Dormitory Authority of the State of New York ("DASNY"). In this declaratory judgment action, the insurer appeals from a judgment of the United States District Court for the Southern District of New York (Forrest, J.), ruling on summary judgment that the two design flaws in the same structure were not "related." The parties had stipulated that if the two flaws were held to be unrelated, the insurer would indemnify loss caused by the second flaw with a second limit of liability.

Continental appeals from the declaration, and further argues against the imposition of prejudgment interest. DASNY's cross-appeal argues that the district court should have calculated prejudgment interest at New York's statutory rate of nine percent. We affirm as to the declaration and vacate as to the calculation of interest.

**BACKGROUND**

In September 1995, DASNY contracted with an architectural firm (the "Architects") to design and oversee the construction of a new building for Baruch

College of the City University of New York. Construction, begun in 1997, was beset by delays from the outset. Plans drawn by the architects and its subcontractor erred in their estimate of the steel requirement and in the specifications of the structural steel girts and exterior facade (the "Steel Girt Tolerance Issue"). To recover losses from the resulting delay and expense, DASNY sent a demand letter to the Architects detailing the Steel Girt Tolerance Issue in May 2002 (the "2002 Demand Letter").

After the Project was finished in 2001, it was discovered that excessive accumulations of snow and ice were sliding off the building onto sidewalks a considerable distance away. In the winter of 2003-04, the architects commissioned a subcontractor to study the "Ice Control Issue." The study concluded that the design of the facade failed to account for temperature variations appropriate for a building in New York, and that the problem could not be solved by adding canopies, as had been hoped. Study of the problem continued into 2005.

In June 2004, Travelers Casualty & Surety Company ("Travelers"), the surety on performance bonds purchased by the Project's general contractor, sued DASNY and the Architects. DASNY was sued for delay-related expense and for pass-through claims from subcontractors, and the Architects were sued for contributing to the delays and for breach of professional duties.

4

DASNY cross-claimed against the Architects, generally alleging breach of contract and negligence. In 2005, DASNY responded to an interrogatory seeking a specification of claims; its answer identified the Ice Control Issue for the first time in the litigation.

The Architects' professional liability policies were claims-made policies: coverage was triggered by a claim made against the Architects during the policy period. Two policies were thereby implicated: 2000-02 and 2003-04. The contracts provided, however, that "[a]ll related claims shall be considered a single claim first made and reported . . . within the Policy year in which the earliest of the related claims was first made and reported[.]" J.A. at 796. "Related claims" were defined as "all claims made against [the Architects] and reported to [Continental] during any policy year arising out of . . . a single wrongful act or related wrongful acts[.]" Id. at 793.

In 2009, DASNY, the Architects, and Continental agreed to settle DASNY's cross-claim against the Architects in the Travelers suit: Continental would pay DASNY (and has) approximately $3.1 million under the 2000-02 policy for the claim made in the 2002 Demand Letter, i.e. the Steel Girt Tolerance Issue. Continental would pay an additional $3 million under the 2003-04 policy if DASNY succeeded in obtaining a declaratory judgment that the Ice Control Issue

5

did not "arise[] out of the same or related wrongful acts identified in the [2002 Demand Letter]." J.A. at 250-51. To that end, DASNY commenced this declaratory judgment action in January 2013.

In March 2013, the district court ruled, on summary judgment, that the Ice Control Issue was not "related" to the Steel Girt Tolerance Issue, and therefore entered judgment ordering Continental to pay $3 million pursuant to the settlement agreement. The district court awarded prejudgment interest calculated on the basis of the average prime interest rate of 3.25% (totaling $389,732.88), and rejected DASNY's argument that a statutory interest rate of nine percent applied pursuant to N.Y.C.P.L.R. §§ 5001, 5004.

Continental appeals the district court's declaration that the Ice Control Issue is not "related" to the wrongful acts identified in the 2002 Demand Letter, and from the imposition of prejudgment interest. DASNY cross-appeals the rejection of the nine percent statutory interest rate, see N.Y.C.P.L.R. §§ 5001, 5004.

**I**

We review the grant of a motion for summary judgment *de novo*. Guippone v. BH S&B Holdings LLC, 737 F.3d 221, 225 (2d Cir. 2013). "[S]ummary judgment is proper 'if . . . there is no genuine issue as to any material fact and [] the moving

6

party is entitled to a judgment as a matter of law.'" Celotex v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).

Continental presents two arguments on the relatedness question: A) the wording of the 2002 Demand letter encompasses both the Steel Girt Tolerance Issue and the Ice Control Issue; and B) the two issues are "related claims" as that phrase is defined in the insurance policies.

**A**

Continental points out that the 2002 Demand Letter alleges professional negligence in terms broad enough to include all design defects in the building: the Steel Girt Tolerance Issue as well as the Ice Control Issue. The letter opens with two categorical allegations: the failure to complete design services in a timely fashion and the failure to properly coordinate services with other members of the design team. However, the rest of the letter specifies the Architects' failures concerning the Steel Girt Tolerance Issue, and identifies no other failure of design or execution.

By 2002, DASNY was already aware of the Ice Control Issue, but the Architects were proposing additional canopies, a fix that would be easy and

7

cheap. It was not until after the study conducted in the winter of 2003-04 that it became clear that major design changes would be needed.

The 2002 Demand Letter, issued before the 2003-04 study, cannot be fairly read to concern the Ice Control Issue; and, focused as it is entirely on the Steel Girt Tolerance Issue, it cannot be fairly read as an omnibus claim concerning all architectural defects in the Baruch College building.

**B**

Continental also argues that the Steel Girt Tolerance Issue and the Ice Control Issue are "related claims" under the policy wording because they "arise[] out of a single wrongful act or related wrongful acts." J.A. at 793. We agree with the district court that the Steel Girt Tolerance Issue and the Ice Control Issue arise from two unrelated wrongful acts. One has to do with the structural integrity of the building; the other, with its aesthetic design. The issues inhere in different systems, each with its own distinct engineering considerations. The two issues involved different design teams; two separate sets of contractors worked on them. The problems ultimately manifested themselves at different times and resulted in different types of damage. The solutions to each issue were wholly different.

8

That both may have resulted from the generalized negligence of the Architects is an insufficient degree of relatedness.

**II**

New York law mandates the imposition of prejudgment interest at the rate of nine percent under certain circumstances. See N.Y.C.P.L.R. §§ 5001, 5004. We review *de novo* the district court's decision that N.Y.C.P.L.R. § 5001 does not apply. See Salve Regina Coll. v. Russel, 499 U.S. 225, 231 (1991). If N.Y.C.P.L.R. § 5001 does not apply, we review the assessment of prejudgment interest for abuse of discretion. Fed. Ins. Co. v. Am. Home Assur. Co., 639 F.3d 557, 566 (2d Cir. 2011).

New York's statutory rate applies to "a sum awarded because of a breach of performance of a contract, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property." N.Y.C.P.L.R. § 5001. This declaratory judgment action did not arise out of the breach of a contract or the deprivation of property. The coverage issue was compromised in a way that left unsettled a number of defenses potentially available to the insurer. DASNY sued under the settlement agreement, which conditioned Continental's obligation to pay upon DASNY's success in this suit. Since DASNY's entitlement

to the $3 million did not arise until the declaratory judgment was rendered, the nine percent statutory rate is not applicable.

For much the same reason, the district court abused its discretion by awarding prejudgment interest from the date of the settlement agreement itself. Interest does not start accruing until there is an obligation to pay. See In re Rio Grande Transp., Inc., 770 F.2d 262, 264 (2d Cir. 1985). The obligation to pay under the settlement agreement was not triggered until the district court entered a judgment for DASNY on the relatedness issue. Therefore, the award of prejudgment interest was improper. We express no opinion as to post-judgment interest.

## CONCLUSION

For the foregoing reasons, we affirm the declaration that the two issues are unrelated, vacate the award of prejudgment interest, and remand for any further proceedings that may be required to enter judgment.