J. Michelle Childs, United States District Judge
Plaintiffs Harry Pennington III and Timothy Lorentz (together "Plaintiffs") filed this putative class action against Fluor Corporation, Fluor Enterprises, Inc., Fluor Daniel Maintenance Services, Inc. ("Fluor Daniel"), SCANA Corporation ("SCANA") and South Carolina Electric & Gas Company ("SCE & G") (collectively "Defendants") alleging that the termination of their employment on July 31, 2017, was in violation of the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101 - 2109 (the "WARN Act").[1] (ECF No. 41.)
This matter is before the court by way of a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed by SCANA and SCE & G (together "SCANA Defendants"). (ECF No. 69.) In their Motion, SCANA Defendants generally argue that dismissal is appropriate because they "were not, as a matter of law, Plaintiffs' employer." (Id. at 1.) Plaintiffs oppose the Motion in its entirety because "the Complaint sufficiently alleges SCANA [Defendants] w[ ][ere] a joint employer of the terminated employees." (ECF No. 71 at 40.) For the reasons set forth below, the court DENIES SCANA Defendants' Motion to Dismiss.
I. BACKGROUND RELEVANT TO INSTANT MOTION
This case arises out of the decision on July 31, 2017, to stop all construction at the V.C. Summer Nuclear Station ("VC Summer") in Jenkinsville, South Carolina. (ECF No. 41 at 2 ¶ 4.) As a result of that decision, approximately 5,000 employees were laid off who had been working and/or receiving assignments at VC Summer. (Id. at 5 ¶ 23.) Until their respective terminations, Pennington worked for Fluor Daniel at VC Summer as a Heavy Equipment Operator and Lorenz was employed by Westinghouse Electric Company LLC
*765 ("WEC") as a Project Manager. (Id. at 4 ¶¶ 14, 15.)
In their Amended Complaint, Plaintiffs allege that in 2008, SCANA Defendants entered into an agreement with WEC for the purpose of constructing "two AP-1000[2] nuclear reactors known as VC Summer 2 and 3." (ECF No. 41 at 6 ¶ 31.) Plaintiffs allege that as the general contractor "WEC was generally responsible for the design, manufacture, and procurement of the nuclear reactor, steam turbines, and generators." (Id. at 7 ¶ 34.) Plaintiffs further allege that in or around 2015, Fluor Corporation was brought in as a subcontractor to WEC to "provide staffing for craft (manual labor) employees and [ ] take primary responsibility for on-site construction" to include "responsibility for the craft, field engineers, and project controls personnel including the costs and scheduling of personnel." (Id. ¶¶ 37, 38.) At the same time, WEC "generally accepted liability for the cost overruns on the Summer Project, by agreeing to build it for a 'fixed-price' at SCANA [Defendants]' option," which option was exercised in May 2016 thus "capping [ ] costs for the Summer Project at close to $14 billion." (Id. ¶¶ 39, 40.)
Plaintiffs next allege that "[i]n early 2017, WEC experienced cash shortfalls related to the Summer Project and a deepening liquidity crisis," which eventually led to WEC and its subsidiaries fil[ ][ing] [ ] voluntary petitions for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code in the Southern District of New York" on March 29, 2017. (ECF No. 41 at 8 ¶¶ 44, 45.) Plaintiffs allege that as a result of WEC's bankruptcy "SCANA [Defendants] became financially accountable for the ongoing costs and plan of completion" for the VC Summer Project. (ECF No. 71 at 10.) Moreover, Plaintiffs assert that SCANA Defendants took over complete control of the VC Summer Project as demonstrated by the following post-bankruptcy conduct:
• "SCANA [Defendants] began paying Fluor's payroll directly to Fluor" (ECF No. 41 at 10 ¶ 57);
• SCANA Defendants "reassigned Fluor and WEC employees in a line of supervision interspersed with SCANA's own managers to whom Fluor and WEC employees would report at various levels" (id. at 11 ¶ 61);
• "SCANA [Defendants]'[ ] ground-level overseers attended all significant construction events, such as crane lifts and major concrete placements, and they attended the continual meetings across the site that took place throughout the day between Fluor and WEC and their respective crews dealing with the operational nuts-and-bolts of the constructions tasks" (id. ¶ 64);
• "SCANA [Defendants]'[ ] input into day-to-day operations became proactive, intrusive, and decisional, in keeping with its assumption of CEO-type control and leadership" (id. at 13 ¶ 72);
• "SCANA [Defendants'] field monitors, who had previously been silent, became vocal in directing Fluor/WEC personnel" (id. ¶ 73);
• "SCANA [Defendants] gave specific orders and directions concerning virtually all facets of the project, including *766 construction, and safety-particularly concerning anything that would cause a delay or add cost" (id. ¶ 75);
• SCANA [Defendants] used their authority to "set the levels of craft personnel needed to perform assignments" or determine whether to hire highly skilled employees for specialized jobs (id. at 14 ¶¶ 76, 77, 80);
• SCANA [Defendants] controlled the work schedules of employees of WEC and Fluor to include whether they worked overtime, the number of overtime hours, their days off or days designated as holidays (id. at 15 ¶¶ 82-84); and
• SCANA [Defendants] provided the facilities, equipment, tools [heavy construction equipment] and materials necessary to complete the work (id. ¶¶ 85, 86).
Plaintiffs allege that after SCANA Defendants gained control of the VC Summer Project, they recognized by "at least March 2017, [that] mass layoffs and shutdowns were almost inevitable at the Summer Project in mid-summer." (ECF No. 41 at 17 ¶ 91.) Subsequently, on July 31, 2017, SCANA Defendants sent WARN Act correspondence to the Director of Business Services for the South Carolina Department of Employment and Workforce containing the following relevant information:
This notice is provided in compliance with the Worker Adjustment Retraining and Notification Act and regulations promulgated thereunder.
SCANA, the parent company of SCE & G, has decided to stop the construction of both Unit 2 and Unit 3 and file a petition for approval of abandonment with the Public Service Commission of South Carolina. Unfortunately, this process is expected to involve immediate, total, and permanent termination of the new nuclear construction project at VC Summer Nuclear Station, .... This complete termination of the construction project will affect 617 SCE & G employees and a currently unknown number of employees of affiliated companies that provide administrative support to the project.
The separations are expected to begin on: September 30, 2017.
(ECF No. 9-4 at 2.) Also on July 31, 2017, Plaintiffs allege that their employers were told by SCE & G "to cease work on the project immediately" resulting in the immediate termination of Plaintiffs' employment. (ECF No. 41 at 17 ¶¶ 95-96.)
As a result of the foregoing, Pennington filed a putative class action Complaint in this court against Defendants Fluor Corporation, Fluor Enterprises, Inc. and SCANA on August 8, 2017, alleging violation of the WARN Act. (ECF No. 1.) In his Complaint, Pennington sought to represent "all other similarly situated former employees, pursuant to 29 U.S.C. § 2104(a)(5) and Fed. R. Civ. P. 23(a), who worked at, reported to, or received assignments from one of Defendants' Facilities and were terminated without cause on or about July 31, 2017, and within 30 days of that date, or were terminated without cause as the reasonably foreseeable consequence of the mass layoffs and/or plant closings ordered by Defendants on or about July 31, 2017, ...." (ECF No. 1 at 3-4 ¶ 16.) Pennington further alleged that Fluor Corporation, Fluor Enterprises, Inc. and SCANA knowingly failed to give their employees at least 60 days prior notice of termination of their employment as required by the WARN Act. (ECF No. 1 at 2 ¶ 3.) On October 25, 2017, Pennington filed an Amended Class Action Complaint, which provided additional WARN Act allegations and added Timothy Lorentz as Plaintiff and Fluor *767 Daniel and SCE & G as Defendants. (ECF No. 41.)
On December 4, 2017, SCANA Defendants filed the instant Motion to Dismiss. (ECF No. 69.) Thereafter, on December 29, 2017, Plaintiffs filed opposition to the Motion to which SCANA Defendants filed a Reply in support of dismissal on January 12, 2018. (ECF Nos. 71, 78.) On February 14, 2018, the court heard argument from the parties on the pending Motion. (ECF No. 85.)
II. JURISDICTION
This court has jurisdiction over Plaintiffs' WARN Act cause of action via 28 U.S.C. § 1331, as it arises under a law of the United States, and also via 29 U.S.C. § 2104(a)(5), which empowers district courts to hear claims alleging violation of the WARN Act.
III. LEGAL STANDARD
A. Motions to Dismiss Pursuant to Rule 12(b)(6)
A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." Francis v. Giacomelli , 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin , 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6)... does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). "In considering a 12(b)(6) challenge to the sufficiency of a complaint, this Rule must be applied in conjunction with the liberal pleading standard set forth in Federal Rule of Civil Procedure 8(a)." Jenkins v. Fed. Bureau of Prisons , C/A No. 3:10-1968-CMC-JRM, 2011 WL 4482074, at *2 (D.S.C. Sept. 26, 2011). Rule 8(a) provides that to be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).
A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support her claim and would entitle her to relief. Mylan Labs., Inc. v. Matkari , 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. Ostrzenski v. Seigel , 177 F.3d 245, 251 (4th Cir. 1999) ; Mylan Labs., Inc. , 7 F.3d at 1134. "In so doing, a court may consider documents attached to the complaint or the motion to dismiss 'so long as they are integral to the complaint and authentic.' " Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., Md. , 684 F.3d 462, 467 (4th Cir. 2012) (quoting Philips v. Pitt Cty. Mem'l Hosp. , 572 F.3d 176, 180 (4th Cir. 2009) ). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly , 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.
B. The WARN Act Generally
The Court of Appeals for the Fourth Circuit has described the WARN Act as follows:
The WARN Act was enacted in 1988 to provide notice of sudden, significant employment loss so that workers could seek alternative employment and their *768 communities could prepare for the economic disruption of a mass layoff. Bader v. N. Line Layers, Inc. , 503 F.3d 813 (9th Cir. 2007) ; 20 C.F.R. § 639.1(a). The Act requires certain employers to provide affected employees with sixty-days notice of a plant closing or "mass layoff." 29 U.S.C. § 2102(a). An employer who fails to provide this notice is liable to each affected employee for backpay, benefits, and attorney's fees. 29 U.S.C. § 2104(a). The statute defines "mass layoff" as a reduction in work force at a "single site of employment" that affects at least thirty-three percent of the employees and a minimum of fifty employees in a thirty-day period. 29 U.S.C. § 2101(a)(3)....The WARN Act itself does not define "single site of employment." However, the Secretary of Labor, pursuant to her authority, has promulgated interpretive regulations. 29 U.S.C. § 2107. These regulations are entitled to "controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc. , 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).
Meson v. GATX Tech. Servs. Corp. , 507 F.3d 803, 808 (4th Cir. 2007).
IV. ANALYSIS
A. The Parties' Arguments
1. SCANA Defendants
In their Motion, SCANA Defendants argue that Plaintiffs' Amended Complaint "fails to state a claim upon which relief can be granted" because SCANA Defendants "were not, as a matter of law, [either] Plaintiffs' employer," or part of a single integrated enterprise. (ECF No. 69 at 1, 3.) In support of their argument, SCANA Defendants assert that Plaintiffs have failed to allege facts in the Amended Complaint to meet any of the factors identified in the regulations as necessary to demonstrate that SCANA Defendants should be liable under the WARN Act as a single employer with the other Defendants. (Id. at 8-17 (citing 20 C.F.R. § 639.3(a)(2)[3] ).) More specifically, SCANA Defendants assert that Plaintiffs' allegations do not demonstrate "common ownership amongst the co-Defendants," "common directors or officers," the exercise by SCANA Defendants of "de factor control over Fluor or Westinghouse," a "unity of personnel policies," or "a plausible inference of dependency of operations." (Id. ) In this regard, SCANA Defendants assert that Plaintiffs' "allegations do not support a plausible inference that SCANA or SCE & G became so entangled with the other co-defendants' operations that they together constitute a single employer under the WARN Act." (Id. at 3.) Accordingly, SCANA Defendants assert that they are entitled to dismissal of the Amended Complaint. (Id. at 19.)
2. Plaintiffs
Plaintiffs oppose SCANA Defendants' Motion to Dismiss arguing that they were a joint employer with WEC and Fluor Defendants because the Amended Complaint alleges facts sufficiently demonstrating (1) the common ownership factor, (2) the de facto exercise of control factor, (3) the unity of personnel policies factor and *769 (4) the dependency of operations factor. (ECF No. 71 at 26-40.) As a result, Plaintiffs assert that SCANA Defendants Motion should be denied or, in the alternative, Plaintiffs should be allowed leave to replead. (Id. at 40.)
3. SCANA Defendants in Reply
In their Reply brief, SCANA Defendants argue that they are entitled to dismissal of the Amended Complaint because (1) "joint-employer theory is absent from the Amended Complaint," (2) "the facts of the Amended Complaint do not support it" and (3) "the WARN Act makes clear that an employer has no WARN obligations to workers on another company's payroll, even if the company in question is a joint employer of those workers." (ECF No. 78 at 2; see also id. at 4 (referencing 20 C.F.R. § 639.3(e).[4] )
B. The Court's Review
SCANA Defendants seek dismissal of the WARN Act claims alleged against them on the basis that they are unable to be held liable under the WARN Act because they were not Plaintiffs' employer. The WARN Act defines an employer as "any business enterprise that employs-(A) 100 or more employees, excluding part-time employees; or (B) 100 or more employees who in the aggregate work at least 4,000 hours per week (exclusive of hours of overtime); ...." 29 U.S.C. § 2101(a)(1). An integral part of the parties' dispute is whether the determination regarding SCANA Defendants' status as Plaintiffs' employer should be made pursuant to a single employer or joint employer concept in relation to the other Defendants and WEC. Upon consideration of the foregoing, the court observes that Plaintiffs clearly allege a single employer theory of liability in the Amended Complaint (see ECF No. 41 at 2 ¶¶ 5, 6; 3 ¶ 7; 19 ¶ 103; and 22 ¶ 118), but then argue joint employer status in their Opposition to SCANA Defendants' Motion to Dismiss. (E.g. , ECF No. 71 at 7, 20, 22, 22 n.2 & 25.) Therefore, because the pending Motion to Dismiss challenges the legal sufficiency of the Amended Complaint's allegations, the court is compelled to apply the single employer concept in its analysis. Cf. Mylan Labs., Inc. v. Akzo, N.V. , 770 F.Supp. 1053, 1068 (D. Md. 1991) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (citation omitted).
At the outset, the court observes that the Court of Appeals for the Fourth Circuit has not provided specific guidance regarding what standard a district court should use to evaluate single employer status under the WARN Act. Nevertheless, this court is not without persuasive guidance. Specifically, the WARN Act regulations set forth the following five non-exclusive factors that can be used to determine if WARN liability should be imposed on an entity: (i) common ownership, (ii) common directors and/or officers, (iii) de facto exercise of control, (iv) unity of personnel policies emanating from a common source, and (v) the dependency of operations." 20 C.F.R. § 639.3(a)(2) ;[5] see also *770 Pearson v. Component Tech. Corp. , 247 F.3d 471, 490 (3d Cir. 2001) ("[T]he DOL factors are the best method for determining WARN Act liability because they were created with WARN Act policies in mind and, unlike traditional veil-piercing and some of the other theories, focus particularly on circumstances relevant to labor relations."). "As in any balancing test, application of these factors requires a fact-specific inquiry, no one factor set out by the DOL is controlling, and all factors need not be present for liability to attach." Guippone v. BH S & B Holdings LLC , 737 F.3d 221, 226 (2d Cir. 2013). Using the aforementioned WARN Act factors, the court considers below whether Plaintiffs' Amended Complaint contains allegations that state a claim against SCANA Defendants for violation of the WARN Act.
1. Common Ownership
The common ownership factor "inquires as to whether a parent or related entity directly owns a separate corporate entity." Guippone v. BH S & B Holdings LLC , No. 09 Civ. 1029(CM), 2010 WL 2077189, at *4 (S.D.N.Y. May 18, 2010) (citing Vogt v. Greenmarine Holding, LLC , 318 F.Supp.2d 136, 140 (S.D.N.Y. 2004) ). Upon review, the court observes that there are no allegations in the Amended Complaint that SCANA Defendants have a direct ownership interest in WEC or Fluor Defendants. Accordingly, the common ownership factor disfavors allowing Plaintiffs to continue this action against SCANA Defendants under the WARN Act.
2. Common Directors and/or Officers
The common directors and/or officers factor "ordinarily looks to whether the two nominally separate corporations: (1) actually have the same people occupying officer or director positions with both companies; (2) repeatedly transfer management-level personnel between the companies; or (3) have officers and directors of one company occupying some sort of formal management position with respect to the second company." Pearson , 247 F.3d at 497. Plaintiffs admit that they "do not allege there were 'common directors and/or officers.' " (ECF No. 71 at 26 n.3.) Thus, this factor also disfavors allowing Plaintiffs to continue this action against SCANA Defendants under the WARN Act.
3. De Facto Control
The de facto control factor is concerned with "whether one company was the decision-maker responsible for the employment practice giving rise to the litigation." Garner v. Behrman Bros. IV, LLC , 260 F.Supp.3d 369, 378 (S.D.N.Y. 2017) (quoting Guippone , 737 F.3d at 227 ). That is exactly the case here, where the basis for Plaintiffs' WARN Act claims is that SCANA Defendants made the decision to effect a mass layoff with no regard for the statutory warning time. More specifically, Plaintiffs allege that SCANA Defendants (a) knew "from at least March 2017, mass layoffs and shutdowns were almost inevitable"; (b) "sent a WARN Act notice to the South Carolina Department of Employment and Workforce"; (c) "informed Fluor and Westinghouse of its decision to abandon the project ... [and] asked them to cease all work on the project immediately"; (d) "stopped paying the cost of employing over 5,000 employees on the site" and (e) "controlled the decision to terminate all the employees on the site without advance notice." (ECF No. 41 at 17 ¶¶ 91, 93, 95 & 96.) Assuming that they are true, these allegations of SCANA Defendants' de facto control weigh strongly in favor of allowing Plaintiffs to continue this action against *771 SCANA Defendants under the WARN Act.
4. Unity of Personnel Policies
The unity of personnel policies factor "is analogous to the aspect in the federal labor law test concerning 'centralized control of labor operations,' " and includes such elements as "centralized hiring and firing, payment of wages, maintenance of personnel records, benefits and participation in collective bargaining." Vogt , 318 F.Supp.2d at 142-43. Upon review, the court observes that there are numerous allegations in the Amended Complaint positing that SCANA Defendants controlled day-to-day personnel policy and labor decisions after WEC declared bankruptcy. (E.g. , ECF No. 41 at 14 ¶¶ 76, 77, 80 & 15 ¶¶ 82-84.) Plaintiffs further allege that SCANA Defendants "controlled the decision to terminate all the employees on the [VC Summer] site without advance notice." (Id. at 17 ¶ 96.) Because "[i]n the context of the WARN Act, the decision to effect a mass layoff is the single most important personnel policy," Vogt , 318 F.Supp.2d at 143, the court is persuaded that this factor weighs strongly in favor of allowing Plaintiffs to continue this action against SCANA Defendants under the WARN Act.
5. Dependency of Operations
The dependency of operations factor "addresses three areas of overlap between related corporations; (1) sharing of administrative or purchasing services, (2) interchanges of employees or equipment, or (3) commingled finances." Guippone , 2010 WL 2077189, at *6 (citation omitted). Upon review, the court observes that Plaintiffs' allegations specify that after WEC's bankruptcy, there was an interrelation between SCANA Defendants and the other Defendants as it relates to employees and equipment. (See ECF No. 41 at 15 ¶¶ 85-86 & 13 ¶¶ 73-74.) Assuming these allegations to be true as the court is required to do under Rule 12(b)(6), the court finds that the dependency of operations factor weighs slightly in favor of allowing Plaintiffs to continue this action against SCANA Defendants under the WARN Act.
After considering the WARN Act factors in the context of the allegations in Plaintiffs' Amended Complaint, the court concludes that the factors of unity of personnel policies, de facto control and dependency of operations weigh in favor of allowing Plaintiffs to continue this action against SCANA Defendants under the WARN Act, and outweigh the countervailing factors of common ownership, common directors and/or officers. Therefore, SCANA Defendants are not entitled to dismissal of this matter pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.
V. CONCLUSION
Upon careful consideration of the entire record and the arguments of the parties, the court hereby DENIES the Motion to Dismiss of Defendants SCANA Corporation and South Carolina Electric & Gas Company. (ECF No. 69.) The court further lifts the stay in this action and INSTRUCTS the parties that the following briefing schedule should be used as it relates to Plaintiffs' pending Motion to Certify Class and Motion to Appoint Counsel: (1) Plaintiffs shall supplement their Motion to Certify Class and Motion to Appoint Counsel on or by June 13, 2018; Defendants shall file opposition to the Motion to Certify Class and Motion to Appoint Counsel on or by June 27, 2018; and Plaintiffs shall file any reply to the opposition to their Motion to Certify Class and Motion to Appoint Counsel on or by July 6, 2018.
IT IS SO ORDERED.

In a related matter, Plaintiffs Lawrence Butler, Lakeisha Darwish, Darron Eigner Jr., Bernard A. Johnson, and Jimi Che Sutton (collectively the "Butler Plaintiffs") also filed WARN Act claims resulting from their terminations on July 31, 2017, against Fluor Corporation and Fluor Enterprises, Inc. (together with Fluor Daniel, the "Fluor Defendants") in the matter of Butler v. Fluor Corp. , C/A No. 0:17-cv-02201-JMC, ECF No. 1 (D.S.C. 2017).

"The AP1000 is a nuclear power plant designed and sold by Westinghouse Electric Company, now majority owned by Toshiba." AP1000, https://en.wikipedia.org/wiki/AP1000 (last visited May 28, 2018). "The plant is a pressurized water reactor with improved use of passive nuclear safety." Id.

"Under existing legal rules, independent contractors and subsidiaries which are wholly or partially owned by a parent company are treated as separate employers or as a part of the parent or contracting company depending upon the degree of their independence from the parent." 20 C.F.R. § 639.3(a)(2). "Some of the factors to be considered in making this determination are (i) common ownership, (ii) common directors and/or officers, (iii) de facto exercise of control, (iv) unity of personnel policies emanating from a common source, and (v) the dependency of operations." Id.

The term "affected employees" ... does not include ... [c]onsultant or contract employees who have a separate employment relationship with another employer and are paid by that other employer, or who are self-employed, are not "affected employees" of the business to which they are assigned." 20 C.F.R. § 639.3(e).

"Although [ ] DOL regulation [639.3(a)(2) ] specifically addresses the relationship between a parent and subsidiary, [ ] courts have applied the DOL factors to determine whether business entities that are not wholly or partly owned by a parent are subject to WARN Act liability as an employer." Administaff Cos., Inc. v. N.Y. Joint Bd. , C/A No. 4:01-cv-01498, ECF No. 39 at 19-20 (S.D. Tex. Sept. 30, 2002) (citations omitted).